**Lenn F. OHMAN,
Respondent–Appellant,**

v.

**Sandra M. OHMAN,
Petitioner–Appellee.**

No. 79A02–8810–CV–00395.

Court of Appeals of Indiana,
Second District.

Aug. 2, 1990.

Rehearing Denied Sept. 6, 1990.

---

E. Kent Moore, Cooke Bache Lazynski & Moore, Lafayette, for respondent-appellant.

Larry L. Dill, Wolcott, for petitioner-appellee.

SULLIVAN, Judge.

Lenn F. Ohman (Husband) appeals the trial court's order granting Sandra Ohman's (Wife) petition for modification of the court's prior order as to custody of the parties' daughter, Jennifer.

We reverse.

Husband argues that the trial judge's decision to modify custody was not based upon sufficient evidence and was contrary to law.

Husband was given custody of the parties' daughter pursuant to the Dissolution Decree, entered on April 16, 1984. Subsequently, Wife filed a petition requesting a modification of visitation, and an agreed order was entered March 31, 1987, specifically setting forth the times for visitation. Wife was entitled to visitation every other weekend, alternating holidays and one week during the summer. Wife testified at the custody hearing that there was no problem with visitation after the more specific order modifying visitation was entered until Husband moved.

On January 9, 1988, Husband moved from Indiana to Winchester, Virginia. Husband admits that he did not provide notice of this move to the court as required by I.C. 31–1–11.5–21.1.[1] He did, however, call his attorney and the school prior to moving. Husband testified that he sent a letter to Wife on January 11, 1988, notifying her of the move. He stated that the move was motivated by economic necessity. He received a job offer on January 8, 1988, from George Johnson Construction Company in Virginia and had to report to work Monday morning in order to secure the job.

Wife testified that she received Husband's letter on January 12 and contacted her attorney. Wife testified that she did

---

1. I.C. 31–1–11.5–21.1 (Burns Code Ed.Repl.1987) provides:

"(a) If an individual who has been awarded custody of a child under section 21 [31–1–11.5–21] of this chapter intends to move to a residence (other than a residence specified in the custody order) that is outside Indiana or one hundred (100) miles or more from the individual's county of residence, that individual must file a notice of that intent with the clerk of the court that issued the custody order and send a copy of the notice to the parent who was not awarded custody and who has been granted visitation rights under section 24 [31–1–11.5–24] of this chapter.

(b) Upon request of either party, the court shall set the matter down for a hearing for the purposes of reviewing and modifying if appropriate the custody, visitation, and support orders. The court shall take into account the distance involved in the proposed change of residence and the hardship and expense involved for noncustodial parents to exercise such rights, in determining whether to modify the custody, visitation, and support orders. (c) Except in cases of extreme hardship, the court shall not award attorney's fees."

not write directly to Husband concerning visitation until July of 1988, nor did she attempt to locate a telephone number for Husband between January and June of 1988.

On May 23, 1988, Wife filed her affidavit for contempt citation against Husband. A hearing was held on June 20, 1988, and the court found that Husband was in contempt of court. The court ordered that "husband can purge himself of his contempt by bearing the burden of visitation expenses." Record at 51. After the contempt hearing, the parties apparently began negotiating for visitation rights different from the March, 1987, visitation order which was still in effect. Pursuant to a letter from Wife sent near the end of July, Husband proposed, through his attorney, to allow visitation from the beginning of August until August 31, 1988. Wife accepted this proposal, drove to Virginia and brought Jennifer back to Indiana. Visitation went as planned except that Husband, with Wife's agreement, took Jennifer for one day for a family gathering.

Prior to this visitation, on July 8, 1988, Wife petitioned to modify custody, alleging in particular that "notwithstanding this Court's finding of contempt, Petitioner has failed or refused to provide or allow Respondent visitation as set out in this Court's order of March 31, 1987." Record at 52. A hearing was held August 23, 1988. At the conclusion of the hearing the court changed custody from Husband to Wife. The court's order was, in relevant part, as follows:

"And the Court having heard the evidence, the arguments of counsel and being duly advised in the premises, does now FIND, ORDER AND DECREE that the allegations of the Motion to Modify as to Custody are true and that the Decree of Dissolution herein be modified, and that the best interests of the child, Jennifer, require that said Decree be modified to provide that the custody of said child, born November 3, 1981, be awarded to the petitioner and natural mother, Sandra M. Ohman Pearson." Record at 73.

An order modifying custody will be reversed on appeal only upon a showing that the trial court abused its discretion. *Poret v. Martin* (1982) Ind., 434 N.E.2d 885, 887. An abuse of discretion has occurred if the court's decision is "clearly *against the logic and effect of the facts and circumstances before the court,* or the reasonable, probable, and actual deductions to be drawn therefrom." *Marshall v. Reeves* (1974) 262 Ind. 107, 115, 311 N.E.2d 807, 812 (original emphasis); *see also Poret, supra,* 434 N.E.2d at 887.

■ The standard which the trial court must apply to petitions to modify custody is set out in I.C. 31-1-11.5-22(d) (Burns Code Ed.Repl.1987) which provides:

"(d) The court in determining said child custody, shall make a modification thereof only upon a showing of changed circumstances so substantial and continuing as to make the existing order unreasonable. In making its determination, the court shall not hear evidence on matters occurring prior to the last custody proceeding between the parties unless such matters relate to a change of circumstances."

The party petitioning for a change of custody must show that a decisive change in the conditions of the custodial home or the treatment of the child has occurred such that it would no longer be in the best interests of the child to maintain the status quo. *Owen v. Owen* (1990) 3d Dist.Ind. App., 549 N.E.2d 410, 414, *trans. pending; Bays v. Bays* (1986) 4th Dist.Ind.App., 489 N.E.2d 555, 560, *trans. denied.* The crucial consideration for the trial court in determining custody questions is the best interest of the child. *Thompson v. Thompson* (1990) 2d Dist.Ind.App., 550 N.E.2d 1332, 1336. Therefore, it is the effect upon the child which renders a change substantial or inconsequential. *Poret, supra,* 434 N.E.2d at 888. The custody of children may not be used as a means of punishing the actions of the parents. *Marshall, supra,* 311 N.E.2d at 810.

■ In the present case, Wife's petition to modify the dissolution decree as to custody was filed July 8, 1988. The pertinent

allegation in Wife's petition was that despite the court's finding of contempt, Husband failed or refused to provide visitation "as set out in this Court's order of March 31, 1987." Record at 52. The contempt hearing was held June 20, 1988. There was, therefore, only an eighteen day period during which, according to Wife's allegations, Husband failed to provide visitation.

Under the March 31, 1987 order, still in effect at the time Wife's petition to modify custody was filed, Wife was entitled to visitation during the weekend of June 24 to June 26. Husband was entitled to the 4th of July holiday. Wife was again entitled to visitation beginning at 6:00 P.M. on July 8, which would have been after the petition for modification of custody was filed. Therefore, there was only one weekend during the eighteen day period in which Wife was entitled to visitation. The March 31, 1987 order also provided that Wife was responsible for "picking up and returning the minor child to the father's address."[2] Record at 36. The record is devoid of any evidence that Wife attempted to visit with Jennifer during the one weekend to which she was entitled under the visitation order then in effect. Further, any failure by Husband to provide visitation on one weekend would not be sufficient grounds to justify a change in custody.

The court's finding with respect to Wife's petition to modify custody was merely that "the allegations of the Motion to Modify as to Custody are true." Record at 73. As noted, to the extent that the allegations concern denial of visitation, they are insufficient to support a change of custody.

At the conclusion of the custody hearing, the trial judge stated that

"the law places a lot of responsibility on [the custodial] parent and common sense places a lot of responsibility on that parent to see that the parent who does not have custody can visit with the child." Record at 192.

Although the trial court was correct to some degree that the custodial parent must do more than condescend to visitation and must demonstrate cooperation in promoting a healthy relationship between the child and non-custodial parent, the non-custodial parent must make some effort to maintain the relationship. As earlier stated, Wife made very little effort to contact Husband or Jennifer after discovering Husband had moved. Furthermore, there is no evidence to indicate that Wife made any effort to seek visitation during the eighteen day period encompassed in Wife's petition to modify custody.

In her brief, as in her custody modification petition, Wife focuses on Husband's leaving Indiana without notice to her or to the court as required by I.C. 31-1-11.5-21.-1. Such conduct certainly supports a contempt citation. In this case, Husband was, in fact, found in contempt and ordered to bear the costs of allowing Wife visitation.

However, we have previously held that I.C. 31-1-11.5-21.1 must be construed in conjunction with I.C. 31-1-11.5-22(d), which requires a showing of a substantial change in circumstances before custody may be modified. *See Pea v. Pea* (1986) 2d Dist.Ind.App., 498 N.E.2d 110, 114, *trans. denied.* A custodial parent's move out of state is not, in itself, sufficient to constitute a substantial change of circumstances. *Poret, supra,* 434 N.E.2d at 890; *Garlinger v. Garlinger* (1986) 2d Dist.Ind.App., 501 N.E.2d 1138, 1139; *Pea, supra,* 498 N.E.2d at 114; *In re Marriage of Davis* (1982) 3d Dist.Ind.App., 441 N.E.2d 719, 722. The fact that the move makes visitation inconvenient is also not of itself sufficient to warrant a change in custody. *Lubeznik v. Liddy* (1985) 3d Dist.Ind.App., 477 N.E.2d 947, 952, *trans. denied.* We note that a move out of state by the custodial parent may, in some cases, constitute a substantial change when considered in context of the relevant circumstances of the child's life. *Poret, supra; Burrington v. Howard* (1989) 1st Dist.Ind.App., 521 N.E.2d 371, 373, *trans. denied.* However,

---

**2.** To be sure, the March 31, 1987 order did not envision a change of residence by either party but the specific language of the order was not modified during or as a part of the June, 1988 contempt proceedings.

in the present case, the evidence reflects that Jennifer has a good relationship with both of her parents and with the new families of both parents. There is no evidence to indicate that Jennifer was not adjusting well to her new environment in Virginia.

In *Sebastian v. Sebastian* (1988) 2d Dist. Ind.App., 524 N.E.2d 29, 33, we said,

"The denial of custody solely on the ground of residence is also improper where the move is being made in good faith and out of a desire to improve the material or psychological life of the custodian, so long as the child's interests are not prejudiced thereby. *H. Clark, The Law of Domestic Relations In the United States* § 20.4, at 515–16 (2d ed. 1987)."

In the present case, Husband testified that the move to Virginia was motivated by economic necessity. There is no evidence in the record to support a contrary conclusion. In addition, the record reflects that Jennifer is happy and well cared for by both of her parents.

We therefore conclude that the court abused its discretion in changing custody from Husband to Wife.

Judgment reversed.

SHIELDS, P.J., and GARRARD, J., concur.