Marcia ANDERSON, Steve Back, Ronald Baldwin, Jo Barrett, Sandra Baumann, Richard Bellar, Karen Brammer, Trudy Cheatham, Cynthia Cring, Douglas Denny, Christina Ems, Roccor Fuschetto, Chris Goodwin, Mary Groves, Renee Haines, Philip Henkel, Doris Hinkle, Larry Holler, James Ingermann, Marva Kammerer, Phillip Kammerer, Joanne Keesling, Margaret Keesling, Michelle Luther, David McGalliard, Carol McMichael, Holly Nial, Dennis O'Rourke, Cynthia Peters, Christopher Reed, Larry Reedy, Lynne Rutovic, Judy Ann Scott, Larry Stevens, Cathy Stuffel, David Swander, Pamela Thomas, Richard Thomas, Larry Watkins, Pamela Weaver and Steven York, Appellants–Defendants,

v.

YORKTOWN CLASSROOM TEACHERS ASSOCIATION, Appellee–Plaintiff.

No. 18A02–9508–CV–492.

Court of Appeals of Indiana.

Feb. 11, 1997.

John M. Feick, Cross, Marshall, Schuck, Deweese, Cross & Feick, P.C., Muncie, for appellants–defendants.

Richard J. Darko, Mary Jane LaPointe, Lowe, Gray, Steele & Darko, Indianapolis, for appellee–plaintiff.

## OPINION

KIRSCH, Judge.

Appellants are forty-three nonunion teachers ("Teachers") employed by the Mount Pleasant Township Community School Corporation ("Mount Pleasant"). The Teachers appeal the entry of summary judgment against them and in favor of Yorktown Classroom Teachers Association ("Association"), requiring them to pay a fair share fee for certain union expenses incurred by the Association in the 1992–93 school year. The Teachers raise three issues for review which we consolidate and restate as:

I.  Whether the arbitrator who determined the fair share fee amount was properly chosen; and

II. Whether the trial court erred in granting summary judgment in favor of the Association.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The Association is the exclusive bargaining representative for all of the certified school employees of Mount Pleasant. The Association is affiliated with the Indiana State Teachers Association ("ISTA") and the National Education Association ("NEA"). For the 1992–93 school year, the Association and Mount Pleasant entered into a collective bargaining agreement. The agreement required all members of the bargaining unit who are not members of the Association to pay a fair share fee to the Association and its affiliates. The fair share fee covers the costs incurred and the services rendered by the Association and its affiliates for collective bargaining, contract administration, grievance adjustment, and other costs related to its duties as the exclusive bargaining representative.[1]

In the fall of 1992, the Association provided the Teachers with financial documents detailing the expenditures made by the Association, ISTA, and the NEA and noted which of the expenditures were part of the fair share fee. During the '92–'93 school year, the Teachers neither joined the Association nor paid a fair share fee. In response, ISTA sought arbitration through the American Arbitration Association ("AAA"). The AAA, using its "Rules for Impartial Determination of Union Fees," appointed Arbitrator James C. Duff to determine the amount of the fair share fees. The Arbitrator conducted hearings on the matter and determined that the Association was entitled to a fair share fee of $362.47 per non-member. The Teachers maintained their refusal to pay.

The Association brought suit in the Delaware Circuit Court seeking damages equivalent to the amount of the fair share fee. The Teachers denied the allegations set forth by the Association, challenged the calculation of the fair share amount, and sought a jury trial. The trial court granted the Association's motion for summary judgment, and this appeal followed.

## DISCUSSION AND DECISION

### I. Arbitration

The Teachers challenge the AAA's procedure for choosing an arbitrator and assert that the arbitrator should have been chosen according to the Rules for Alternative Dispute Resolution ("ADR rules"). We disagree.

---

1. *See* IC 20–7.5–1 to –14. We note that IC 20–7.5–1–6 has recently been amended to provide: "A school employee may not be required to join or financially support through the payment of fair share fees, representation fees, professional fees, or other fees, a school employee organization. A rule, regulation, or contract provision requiring financial support from a school employee to a school employee organization is void." 1995 Ind. Acts P.L. 199–Sec. 1.

This amendment applies only to contracts entered into after June 30, 1995. Therefore, it is inapplicable to the present case.

Arbitration is recognized as a proper alternative to litigation. Ind.Alternative Dispute Resolution Rule 1.1. The ADR rules, however, apply only in cases that have been filed in the courts of this state. Ind.Alternative Dispute Resolution Rule ˙1.4. A.D.R. 1.4 provides, in pertinent part, "Unless limited by specific provisions, or unless there are other specific statutory procedures which are applicable, *these rules shall apply in all civil and domestic relations litigation filed in all Circuit, Superior, County, Municipal, and Probate Courts in the state.*" (Emphasis added). The section of the ADR rules dealing specifically with arbitration provide further support for this proposition. Ind.Alternative Dispute Resolution Rule 3.1 permits the parties to file with the court an agreement to arbitrate fifteen days after the time period allowed for a peremptory change of venue under Ind.Trial Rule 76. Pursuant to Ind.Alternative Dispute Resolution Rule 3.2, a case remains on the court docket and calendar during arbitration until the parties agree to be bound by the arbitration. The common thread tying these rules together is the assumption that the ADR rules come into effect only after litigation has been initiated in an Indiana state court.

Here, when the Association and its affiliates went to arbitration with the Teachers, no case had been filed with an Indiana state court. Consequently, arbitration pursuant to the ADR rules could not have been invoked. The arbitration procedure used here was approved by the Court of Appeals for the Seventh Circuit in *Ping v. National Educ. Ass'n,* 870 F.2d 1369 (7th Cir.1989), and, more recently, by this court in *DeBaets v. National Educ. Ass'n—South Bend,* 657 N.E.2d 1236 (Ind.Ct.App.1995), *trans. denied* (1996), and *Flosenzier v. John Glenn Educ. Ass'n,* 656 N.E.2d 864 (Ind.Ct.App.1995), *trans. denied,* (1996).[2]

■ Prior to those decisions, the United States Supreme Court in *Chicago Teachers Union v. Hudson,* 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986), established basic procedural mechanisms to be followed in order for a union to collect fair share fees. One of those requirements was that the nonunion employees have a reasonably prompt opportunity to challenge a fair share fee before an impartial decision maker. *Hudson,* 475 U.S. at 308–09, 106 S.Ct.at 1076–77. The Court provided guidance on how to accomplish this goal, stating, "we think that an expeditious arbitration might satisfy the requirement of a reasonably prompt decision by an impartial decision maker, so long as the arbitrator's selection did not represent the Union's unrestricted choice." *Id.* at 308 n. 21, 106 S.Ct. at 1077 n. 21.

In *Ping,* the plaintiffs asserted that they were not given input into the selection of the arbitrator. 870 F.2d at 1373. The Seventh Circuit applied the rule set forth in *Hudson* and approved retention of the AAA to select an arbitrator. *Id.* In affirming the procedures used by the AAA, the court noted that because the AAA's selection process precluded input from either party, the selection of the arbitrator was not the unrestricted choice of the union. *Id.* As such, the process met the constitutional requirements set forth in *Hudson. Id.* at 1375.

Here, as in *Ping,* the Association sought arbitration from the AAA. The AAA then selected an arbitrator, James Duff, according to its internal rules. Those rules do not provide for either side engaging in arbitration to have any input into the selection of the arbitrator. The arbitration procedure employed by the Association has met the standard set forth in *Hudson. See Ping* 870 F.2d at 1375. Therefore, in the absence of conditions that would invoke application of the ADR rules concerning arbitration, we affirm the AAA's selection of an arbitrator.

## II. Summary Judgment

The Teachers also assert that the trial court erred in granting summary judgment to the Association and contend: (1) the trial court failed to strike affidavits designated by the Association; and (2) the Association failed to properly establish the amount of its

**2.** Unlike the Teachers in the present case, the nonunion teachers in *DeBaets* and *Flosenzier* did not challenge the arbitration process. We note, however, that in both of those cases, the AAA selected an arbitrator without input from either party. *DeBaets,* 657 N.E.2d at 1237; *Flosenzier,* 656 N.E.2d at 866.

chargeable expenses. We disagree with both contentions.

When reviewing the grant or denial of summary judgment, this court applies the same standard as the trial court. *Conwell v. Beatty,* 667 N.E.2d 768, 773 (Ind.Ct.App. 1996). Summary judgment is appropriate if the properly designated evidentiary matter demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Gallatin Group v. Central Life Assur. Co.,* 650 N.E.2d 70, 72 (Ind. Ct.App.1995). We construe all facts and reasonable inferences against the moving party. *Sizemore v. Arnold,* 647 N.E.2d 697, 699 (Ind.Ct.App.1995). If the moving party sustains its burden, the nonmovant must respond by introducing specific facts that show a genuine issue for trial; he may not merely rest on allegations in the pleadings. *Stephenson v. Ledbetter,* 596 N.E.2d 1369, 1371 (Ind.1992). We will affirm the granting of summary judgment on any legal theory which is consistent with the designated evidence in the record. *Crist v. K–Mart Corp.,* 653 N.E.2d 140, 142 (Ind.Ct.App.1995), *trans. denied* (1996).

■ Affidavits supporting or opposing motions for summary judgment must be made upon the affiant's personal knowledge and must show that the affiant is competent to testify upon the matter. Ind.Trial Rule 56(E); *Scott v. City of Seymour,* 659 N.E.2d 585, 592 (Ind.Ct.App.1995). Here, the Teachers challenge the affidavits of Doyle McAllister and Larry Davis, both of whom are Associate Executive Directors of ISTA, and Michael McPherson, a Certified Public Accountant, and Manager of Internal Auditing for the NEA. With respect to McAllister's and Davis' affidavits, the Teacher's allege that they should have been stricken because of legal conclusions and references made to our decision in *Albro v. Indianapolis Education Association,* 585 N.E.2d 666 (Ind. Ct.App.1992), *aff'd and adopted by Fort Wayne Educ. Assoc. v. Aldrich,* 594 N.E.2d 781 (Ind.1992), *reh'g denied.* By referring to

*Albro,* the ISTA directors, rather than making a legal conclusion, provided essential information concerning the method of determining whether ISTA considered particular expenditures to be chargeable or nonchargeable to the Teachers according to the standard set forth by law. Thus, we find no error on the trial court's refusal to strike the affidavits.[3] *See Flosenzier,* 656 N.E.2d at 869 (affirming the use of ISTA's affidavit and its reference to *Albro* ).

■ The Teachers challenge McPherson's affidavit on the basis that it is conclusory as to which services are provided by the Association. McPherson's affidavit, however, sets forth assertions based on his personal knowledge of NEA operations, and on his preparation of a financial report detailing the amount of money spent on NEA programs, including a program responsible for providing services to state and local affiliates such as the Association. These are assertions of fact, and we find no error on the part of the trial court.

■ The Teachers also contend that the Association failed to prove the expenses chargeable to the Teachers. In *Lehnert v. Ferris Faculty Association,* 500 U.S. 507, 519, 111 S.Ct. 1950, 1959, 114 L.Ed.2d 572 (1991), the United States Supreme Court held that in order for the expenses of union activities to be properly chargeable to nonunion employees, the activities must: "(1) be 'germane' to collective-bargaining activity; (2) be justified by the government's vital policy interest in labor peace and avoiding 'free-riders'; and (3) not significantly add to the burdening of free speech that is inherent in the allowance of an agency or union shop." This court, in *Albro,* applied *Lehnert,* and held that chargeable expenses must be affirmatively proven by the union. 585 N.E.2d at 670.

The Teachers' contention in the present case mirrors the arguments made by the nonunion teachers in *DeBaets* and *Flosenzier.* Those cases also were disputes concerning fair share fees between a school employee union and teachers who did not join the

---

**3.** The Teachers asserted in their brief that the trial court failed to rule on their objections to the affidavits. *Appellant's Brief* at 9. However, the Association correctly pointed out, *Appellee's Brief* at 22 n.8, that the trial court denied the Teachers' objection to the affidavits. *Record* at 67.

union for the 1992–93 school year. In both cases, the school associations, ISTA, and the NEA designated evidence that affirmatively proved the expenses properly chargeable to the nonunion teachers. *See DeBaets,* 657 N.E.2d at 1238–39 (noting that the affidavits of McAllister, McPherson, and the president of the local school board association, combined with tables specifying the expenses incurred by particular departments, sufficiently proved chargeable expenses); *Flosenzier,* 656 N.E.2d at 869–70 (noting affidavits from ISTA's executive director and NEA's staff counsel, along with expense tables, sufficiently proved chargeable expenses).

Here, the Association presented largely the same evidence that the school associations in *DeBaets* and *Flosenzier* presented when they were awarded summary judgment: affidavits from McAllister and Davis, ISTA's Associate Executive Directors, McPherson, NEA's Manager for Internal auditing, Richard Wilkof, NEA's Staff Counsel, Donna McCarthy, Association Treasurer, and multiple exhibits that provided detailed financial information concerning chargeable and nonchargeable expenses.[4] This designated evidence provides sufficient detail concerning the expenses that formed the basis of the fair share fee. In response to the Association's designation of evidence in support of summary judgment, the Teachers were required to specifically identify evidence upon which they relied. *See* T.R. 56(C). The Teachers failed to do so. Therefore, in the absence of facts that would distinguish this case from *DeBaets* and *Flosenzier,* we affirm the trial court's entry of summary judgment in favor of the Association.

Affirmed.

FRIEDLANDER and BARTEAU, JJ., concur.

---

4. Teachers also challenge the facts and figures presented by the Association as being unreliable because the Association was the sole possessor of such information. The Teachers had the opportunity to conduct discovery but failed to do so. Thus, their argument is without merit. *See Flosenzier,* 656 N.E.2d at 870 (rejecting a similar claim when the nonmember teachers did not conduct discovery).